# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MICHELLE EBERLY

### DEFENDANTS
PENNSYLVANIA STATE UNIVERSITY

**(b)** County of Residence of First Listed Plaintiff: York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Offices of William C. Reil, 1515 Market Street, Suite 1200, Philadelphia, PA 19102, 215-564-1635

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [X] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983

Brief description of cause:
PLAINTIFF'S DEGREE ILLEGALLY REVOKED BY DEFENDANT

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ NONE AT THIS TIME
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: Feb 12, 2021
SIGNATURE OF ATTORNEY OF RECORD: *William C. Reil*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __950 Quaker Meeting Road, Dover, PA 17315__

Address of Defendant: __1600 Woodland Road, Abington, PA 19001__

Place of Accident, Incident or Transaction: __PENNSYLVANIA STATE UNIVERSITY__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [✓]

I certify that, to my knowledge, the within case [ ] is / [●] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __02/12/2021__   *William C. Reil* (signature)   __26833__
                        Attorney-at-Law / Pro Se Plaintiff    Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

A. *Federal Question Cases:*
- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [✓] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify):* _____
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

[ ] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: _____   _____   _____
                               Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

| | |
|---|---|
| LAW OFFICES OF WILLIAM C. REIL | |
| BY: William C. Reil, Esquire | |
| Identification No. 26833 | |
| 1515 Market Street, Suite 1200 | |
| Philadelphia, PA 19102 | ATTORNEY FOR PLAINTIFF |
| MICHELLE EBERLY : | UNITED STATES DISTRICT |
| 950 Quaker Meeting Road : | COURT FOR THE EASTERN |
| Dover, PA 17315 : | DISTRICT OF PENNSYLVANIA |
| : | |
| v. : | 2:21-cv-00678 |
| : | |
| : | |
| PENNSYLVANIA STATE UNIVERSITY : | |
| 1600 Woodland Road : | |
| Abington, PA 19001 : | ARBITRATION |

## COMPLAINT – CIVIL ACTION

### PARTIES

1. The plaintiff is Michelle Eberly, hereafter referred to as "Eberly", an adult individual whose address for service of process is specified in the caption. At all times material herein, plaintiff was a student at Penn State University, "Penn State".

2. The defendant is Penn State University, a state-related educational entity of the Commonwealth of Pennsylvania, whose address for service of process is indicated in the caption.

### JURISDICTION AND VENUE

3. The Court has jurisdiction under the Due Process clause of the United States Constitution and the Civil Rights Act, 42 U.S.C. 1983, with pendent jurisdiction to consider any claims arising under state law.

4. Venue is properly before the Court, since defendant is located and conducts business in the Eastern District of Pennsylvania.

## SUMMARY

5. The gravamen of this lawsuit arises out of the retroactive rescission of plaintiff's Master's degree, over 1.5 years after it was granted. Penn State University decided to retroactively allege that portions of plaintiff's Master's thesis had been plagiarized, after said thesis had been carefully and extensively vetted by three professors at Penn State and granted by the University. See Exhibit "A", Master's Signatory Page. This "ex post facto" action by Penn State was without authority, in violation of due process, and breached the expressed and implied contract with plaintiff.

6. A focus of this lawsuit involves the fact that the genesis of the actions of Penn State began with a submission of plaintiff's Master's thesis, over a year and a half after it had been awarded, to a computer program called "Turn It In", without notice to plaintiff and without such program ever being utilized in the Department of Communications where a committee awarded plaintiff her degree. Later, the chairman of the department wrote a report defending plaintiff's Master's thesis. See Exhibit "B".

7. The motive force for a re-examination of plaintiff's Master's thesis arose out of a dispute plaintiff had with Professor Buccitelli. Professor Buccitelli sent an email on 03/21/19, involving personal information about plaintiff, to her entire class. See Exhibit "C". Professor Buccitelli was in no way involved with plaintiff's dissertation, and it did not come to his attention until a year and half later. Professor Buccitelli, *sua sponte*, decided to run plaintiff's thesis through "Turn It In". No one else's thesis in the Communications Department was submitted to the "Turn It In" program.

**FIRST CAUSE OF ACTION**
**MICHELLE EBERLY V. PENN STATE UNIVERSITY**

8. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

9. After spending over $70,000 and investing 3 years in the graduate program, Michelle Eberly was awarded a graduate degree by Penn State in May 2018.

10. This cause of action is for violation of plaintiff's due process rights when Penn State unjustly and retroactively rescinded her Master's degree without authority or proper procedure.

11. On or about 02/04/20, Penn State sent an email to plaintiff rescinding her Master's degree.

12. Plaintiff began work on her graduate degree on or about August 2015.

13. There was no written procedure or protocol for Penn State to retroactively withdraw her degree.

14. Plaintiff's Master's degree was vetted by professors from Penn State on her thesis committee, and her right to the graduate degree had vested.

15. Plaintiff relied on Penn State's award of the degree, and she was never given any notice by the University, or in their publications that the degree was contingent on review by a computer program at the some future time.

16. After plaintiff received her Master's degree, she was invited by Penn State to do work on her Ph.D. thesis and given a scholarship to study at Penn State and to teach as a graduate assistant. Again, Penn State had an opportunity to scrutinize plaintiff's scholarly credentials to teach and do research.

17. As a result of the conduct of Penn State and her agents, the civil rights of plaintiff under 42 U.S.C. 1983 and Due Process rights of plaintiff were violated as set forth herein.

18. Plaintiff suffered damages, including but not limited to, failure to receive a Master's or Doctoral degree, loss of opportunity for further employment, and loss of her tuition, and the cost of books and incidental expenses, as well as loss of future earnings and earning capacity. Plaintiff also suffered consequential damages arising from the arbitrary actions of the defendant in failing to allow plaintiff to complete her graduate program, as well as emotional distress and loss of life's pleasures.

WHEREFORE, plaintiff requests damages not in excess of $150,000 at Arbitration only, plus interest, costs, and attorney's fees, if applicable, as well as reinstatement and any appropriate judicial relief.

## SECOND CAUSE OF ACTION
## MICHELLE EBERLY V. PENN STATE UNIVERSITY

19. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

20. This cause of action is for violation of due process and 42 U.S.C. 1983 arising out of the violation of plaintiff's procedural rights during the investigatory process by Penn State.

21. Plaintiff relied on the representations of her thesis Board who vetted her Master's thesis over a period of 4 months, as well as the representations implicit in the Master's Diploma awarded by Penn State.

22. Professors Nahko Kim and Peter Kareithi were on the thesis board of plaintiff and they issued a formal Designation attached as Exhibit "B", indicating that they had read and approved plaintiff's Master's thesis.

23. Ms. Eberly had to write her thesis over a period of several months before the Designation of acceptance was issued by Penn State faculty.

24. Dr. Kareithi was the chairman of the Communications Department who signed the Designation, as an agent for Penn State. Plaintiff relied on the

representations of her thesis committee, and the Diploma conferred by Penn State University.

25. Plaintiff was offered a scholarship to teach as a graduate assistant at Penn State and to work on her Ph.D., in part because of her Master's thesis. No reassessment of her Master's thesis was performed at this time.

26. Professor Buccitelli was not a member of plaintiff's thesis committee or department, and plaintiff did not take his class until January 2019 in the Ph.D. program, several months after her thesis had been approved.

27. Professor Buccitelli accessed plaintiff's thesis without permission and put it into a computer program called "Turn It In", all without permission of plaintiff and in violation of the FERPA (Family Educational Rights and Privacy Act) statute.

28. As a result of the conduct of Penn State and its agents, the civil rights of plaintiff under 42 U.S.C. 1983 were violated as set forth herein. No hearing was conducted where plaintiff had an opportunity to cross-examine and call witnesses. She was not given an advisor and attorneys were not allowed to represent her. The burden of proof was by a mere preponderance of the evidence, instead of a heightened standard given the retro activity issue and the support of her department. All professors who signed plaintiff's thesis were not called as witnesses. There was no definition of plagiarism with which plaintiff was charged. There were no guidelines as to how the computer program "Turn It In" was to be used under the circumstances and what was an acceptable output for the program.

29. Plaintiff suffered damages, including but not limited to, failure to receive a Master's or Doctoral degree, loss of opportunity for further employment, and loss of her tuition, and the cost of books and incidental expenses, as well as loss of earnings and future earning capacity. Plaintiff also suffered consequential damages arising

from the arbitrary actions of the defendant in failing to allow plaintiff to complete her graduate program, as well as emotional distress and loss of life's pleasures.

WHEREFORE, plaintiff requests damages not in excess of $150,000 at Arbitration only, plus interest, costs, and attorney's fees, if applicable, as well as reinstatement and any appropriate judicial relief.

## THIRD CAUSE OF ACTION
## MICHELLE EBERLY V. PENN STATE UNIVERSITY

30. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

31. This cause of action is for violation of due process and plaintiff's civil rights by Penn State University, with respect to plaintiff, arising out of Professor Buccitelli's unauthorized re-assessment of her thesis and the improper use of the computer program "Turn It In".

32. Plaintiff had a property right in her degree.

33. Penn State University is a state-related institution, and considered as a state actor for purposes of due process.

34. Plaintiff was never given a proper hearing, with due process, prior to her dismissal.

35. A touchstone of due process is notice and an opportunity to be heard, by an impartial tribunal. *See J.P v. Department of Human Services*, 170 A.3d 575 (Pa. Cmwlth. 2017).

36. The genesis of this incident came long after plaintiff had been awarded her Master's degree and arising out of a dispute when plaintiff had taken an American history course with Professor Buccitelli. Professor Buccitelli had a "run-in" with plaintiff, and was forced to write a letter of apology to her, after he had sent a private email to plaintiff's entire class concerning her disability.

37. On or about 03/21/19, plaintiff met with Dr. Buccitelli who told her that she should not be in the American Studies program with her disability (two knee replacements and a hip replacement, *inter alia*) and she should get out immediately. He stated that she would never be able to publish because she can only plagiarize.

38. Professor Buccitelli had nothing to do with plaintiff's Master's thesis nor had she taken any classes from Professor Buccitelli prior to her Master's thesis being awarded. Professor Buccitelli took it upon himself, without plaintiff's permission or authorization by anybody at Penn State, to go into plaintiff's Master's thesis and run it through a computer program called "Turn It In".

39. "Turn It In" is a program which purports to compare similarities in one document with other documents.

40. "Turn It In" is not a plagiarism detector, and Penn State had promulgated no score on this machine which it considered tantamount to plagiarism.

41. "Turn It In" was never used by plaintiff or anyone in her department when she did her Master's thesis. Plaintiff had received no training on this program. She was also recognized by Penn State as a disabled student. Plaintiff was the only person whose thesis in the Communications Department was scrutinized by "Turn It In".

42. As a matter of fact, Professor Kareithi said that as a result of what happened to plaintiff, the Communications Department was going to start using "Turn It In". It is alleged that the "Turn It In" program was used to measure plaintiff's alleged plagiarism at a future time when plaintiff had not even been aware of such program, nor had her department used such a program when she wrote her Master's thesis. In testimony to the investigative committee, Professor Kareithi, the chairman of the communications department stated that "Turn It In" had not been used in his department at the time of plaintiff's Master's thesis.

43. Thus, plaintiff was judged on technology which did not exist in her department at the time of her thesis. To whit, such technology was not properly used in the instant case. The computer program, upon which plaintiff's reassessment was based, was not properly used. There were no guidelines for the use of such program, particularly when such program was applied retroactively to one who was unfamiliar with the program.

44. Ms. Eberly had no training in the program "Turn It In". This program was not used in her department at the time she did her Master's thesis. It was apparently commonly used in Professor Buccitelli's department.

45. There was no percentage set which indicated plagiarism, and the percentage which plaintiff received, was on the borderline.

46. Today the use of "Turn It In" is much more common, to the extent that students run their own papers through this program before submitting them. Plaintiff did not have this ability, her paper was not submitted to this program by her thesis committee, and she was not even aware that such capacity existed or was required.

47. The chairman of the Communications Department supported Ms. Eberly, and stated to the investigation committee that his department would now start using "Turn It In" as a result of the incident with Ms. Eberly.

48. There is no definition of plagiarism in the Penn State handbook, and such term is void for vagueness as applied in the instant case.

49. Dr. Kareithi and Dr. Kim, who were plaintiff's thesis advisors over several months, admit to never having given Ms. Eberly any feedback concerning plagiarism or suggesting that her thesis would be submitted to "Turn It In" or a similar computer program.

50. All of the above were substantial factors in causing plaintiff to be dismissed from the Communications program and her Master's degree to be rescinded.

WHEREFORE, plaintiff requests damages not in excess of $150,000 at Arbitration only, plus interest, costs, and attorney's fees, if applicable, as well as reinstatement and any appropriate judicial relief.

    Respectfully submitted,

    *William C. Reil*

    William C. Reil, Esquire
    Attorney for Plaintiff
    02/12/21

# EXHIBIT "A"

# EXHIBIT "A"

# EXHIBIT "A"

# EXHIBIT "A"

# EXHIBIT "A"

# EXHIBIT "A"

## MASTER'S SIGNATORY PAGE

Name of Student **Michelle L. Eberly**   Penn State ID **927601129**
Penn State email address **mls157@psu.edu**   Permanent email address **mls157@psu.edu**
Major **Communications**   Graduation semester and year **Spring 2018**

I hereby certify that I have obtained the necessary permission for copyrighted material included in my thesis and choose that the document be placed in the eTD archives with the following status:

[X] **1. OPEN ACCESS** — Allows free worldwide access to the entire work beginning immediately after degree conferral. Appropriate for the majority of thesis submissions in fulfilling the requirement for making the work available to the public.

[ ] **2. RESTRICTED (PENN STATE ACCESS ONLY) FOR A PERIOD OF TWO YEARS*** — Access restricted to individuals having a valid Penn State Access Account. Allows restricted access of the entire work beginning immediately after degree conferral. At the end of the two-year period, the status will automatically change to Open Access. *Intended for use by authors in cases where prior public release of the work may compromise its acceptance for publication*

[ ] **3. RESTRICTED FOR A PERIOD OF TWO YEARS FOR PATENT DEVELOPMENT** — Restricts the entire work for patent and/or proprietary purposes. At the end of the two-year period, the status will automatically change to Open Access. Selection of this option requires that an invention disclosure (ID) be filed with the Office of Technology Management (OTM) prior to submission of the final thesis and confirmed by OTM and Office of Theses and Dissertations.   Confirmed _____

Signature of Student: *Michelle L. Eberly*   Date: **3/30/2018**

---

### Adviser Approval

[ ] I confirm that, as required by federal guidelines, *all federal funds used for the work described in this thesis / dissertation have been explicitly acknowledged in the document*, along with a disclaimer indicating that the findings and conclusions do not necessarily reflect the view of the funding agency. [Please see the Research Terms Clarification to 2 CFR § 200.328 (pp. 20-21) for the precise language to be used.]

[✓] I confirm that *no federal funds were used for the work described in this thesis / dissertation*.

[✓] I accept and approve the thesis of the student named above and agree to distribution as indicated

Signature: _____   Date: **30 MAR 2018**
Print name here: **NAKHO KIM**

---

### FACULTY APPROVAL
(a minimum of three signatures required, including dept. head or chair of graduate program)

We *accept and approve* the thesis of the student named above and agree to distribution as indicated.

Signature: _____   Date: **30 MAR 2018**
Print name here: **NAKHO KIM**

Signature: _____   Date: **03/30/2018**
Print name here: **PETER J. KAREITHI**

Signature: _____   Date: _____
Print name here: _____

**Head or Chair of Graduate Program**

Signature: _____   Date: **03/30/2018**
Print name here: **PETER J. KAREITHI**

*Requests for a two-year extension can be made by contacting the Office of Theses and Dissertations (gradthesis@psu.edu) 30 days prior to the expiration of the restriction.

(A)

8/8/2020

Yahoo Mail - Your Master Thesis has been released

## Your Master Thesis has been released

From: gradthesis@psu.edu (gradthesis@psu.edu)

To: mls157@psu.edu; shellyeberly@yahoo.com

Date: Wednesday, December 18, 2019, 10:18 AM EST

Dear Michelle L Eberly,

Your Master Thesis titled "DRESSAGE REPRESENTATIONS: TRANSITIONING FROM IMPERIALISTIC 'HIGH CULTURE' TO MODERN ENTERTAINMENT" has been released with the access level of Open Access. You can view your published submission at: https://etda.libraries.psu.edu/catalog/15343mls157.

If you have questions or comments, please email the Office of Theses and Dissertations at gradthesis@psu.edu. You may also call (814)865-5448, or send mail to:
Office of Theses and Dissertations
115 Kern Building
Graduate School
University Park, PA 16802

1/1

# EXHIBIT "B"

# EXHIBIT "B"

# EXHIBIT "B"

# EXHIBIT "B"

# EXHIBIT "B"

# EXHIBIT "B"

## General Overview on the Academic Integrity of the MA Thesis by M.Eberly

On March 12, 2019, we, the co-chairs of the thesis committee for Michelle Eberly (who received MA degree in Spring 2018) were informed of concerns about academic misconducts in her thesis work. Taking the claims of possible plagiarism seriously, we conducted a thorough review of her thesis. Our combined findings are as follows.

1. The full Turn-it-in review was conducted, resulting in a 33% originality score at the "5-words threshold" used for more rigorous inspection. At the "1% threshold" commonplace for most papers it was a lower 15%, widely regarded as the borderline for further inspection.

2. Upon detailed review of the individual parts that were singled out as possible plagiarized contents, it was found that most instances are concentrated in the lit review, methodology, and theory explanation paragraphs of each finding chapters.

2-1. Several instances were simply common phrases in student scholarship, e.g. "Submitted in partial fulfillment of", "Table of contents" and "Signatures on file at the graduate school."

Some of the phrases are common statements that would not require citing, e.g. "The debate over media and culture is not a new one" and "Dressage is a highly skilled form of equestrian performance."

2-2. Rationale for using theories, and definitions of some theories were reproduced from the seminar textbooks and core articles on the subject. This is where the major portion of faulty citations occurred. all sources above, while having multiple instances of missed citations, are addressed both in the text and in the bibliography.

For example, in the case of the biggest problem identified (scribd.com), the contended material is largely legitimate academic sources included in the bibliography – including primary texts in theory and methods courses the student took in the program. Other online repositories such as docslide.us, socresonline.org.uk, and sportstudies.org also refer to academic literature that the student included in her reference section. They include:

 - Foss, K.A., Littlejohn, K.A., and Oetzel, J.G. (2017).  Theories of Human Communication, eleventh edition.  Long Grove, Illinois.  Waveland Press, Inc.

- Hills, M.  (2002).  Fan Cultures.  New York:  Routledge.

- Dashper, K. and Fletcher, T. (2013). 'Bring on the Dancing Horses!': Ambivalence and Class Obsession Within British Media Reports of the Dressage at London 2012.  Leeds Metropolitan University.  Sociological Research Online.  18 (2) 17

- Hedenberg, S., and Pfister, G. (2012).   Presenting Femininity in a Male Domain – Female Circus Riders 1800 – 1920.  Scandinavian Sport Studies Forum. 3

In at least 20 instances identified as sourced from "student papers," the sources for that information also came from readings encountered in at least three courses in the program. The sources are all listed in the student's bibliography, which led us to consider this matter as a case of sloppy in-text citation.

2-2. In the two examples while Wikipedia is cited as a source in the Turnitin Similarity Report, the student used material from the primary source cited by Wikipedia and NOT from Wikipedia. This was easy to tell because the primary sources were in her bibliography and contained information which is in her thesis but not on the Wikipedia page on the subject. The instances involving Wikipedia mainly occurred in explanations of competition rules and common historical facts.

Some problems identified under "Internet sources" related to information gathered from equestrian breeding and competition sites which were listed on the bibliography. Others were difficult to check as the links led to the home pages of the identified source but not to the specific pages where the contended information was contained.

2-3. There are paragraphs in the analysis where she explicitly explains other researcher's ideas, without clearly putting quotation marks or sufficiently paraphrasing them. It's clear in the context that she does not intend to hide the reference but did not follow the correct format. In the report, such instances are in the "less than 1%" category.

In all, it seems Eberly took the general academic advice such as "you do not have to cite common knowledge such as textbooks and encyclopedias" too broadly, as well as not making clear when quotes continue.

Taking also into account that the main finding of the thesis is the structuring of the historical phases based on changes in the roles of representations, it can be assumed that Eberly's conduct did not extend to her original academic contribution. Rather than willfully plagiarizing other people's ideas as her own findings, it was mainly limited to introducing definitions and basic knowledge about the subject (i.e. Equine dressage).

The result of this effort was a mixed bag for it does not erase the problem of sloppy citations, but we are convinced that the matters of concern are not the result of deliberate cheating.

4.4.2019.

**Peter Kareithi, Co-chair of thesis committee**

**Nakho Kim, Co-chair of thesis committee**

# EXHIBIT "C"

# EXHIBIT "C"

# EXHIBIT "C"

# EXHIBIT "C"

# EXHIBIT "C"

# EXHIBIT "C"

**Anthony Buccitelli** (AMST 591, Section 001: Seminar (21911--HB---P-AMST---591------001-)) just sent y...

Anthony Buccitelli
Thu 3/21/2019 3:53 PM
Capeles Segarra, Angela Mercedes

## Follow-up on Topic and Methodology Statement Issue

Hi Shelley,

I spoke with Alan Babcock in the Disability Services office this afternoon regarding this issue.

I think it is appropriate to move ahead with the sanctions I described during our meeting today. These would be a failing grade for the AMST 591 course, and a referral to the Academic Integrity Committee to consider administrative sanction.

I have written this up in an academic integrity report, which is available for your review. You will need to review this report and then sign indicating that you either accept or challenge the allegation and sanctions it describes. It is your right to challenge, if you see fit to do so. This report is available in my office, so please schedule a time to come to do this.

Let me know if you have any further questions.

Regards,
Anthony Buccitelli



**Anthony Buccitelli**
abb20@psu.edu

*[Handwritten annotation:]* Sent to entire class